UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BARBARA S.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00154-JMS-MJD |
| | ) | |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Barbara S. applied for disability insurance benefits ("DIB") and/or supplemental security income ("SSI") from the Social Security Administration ("SSA") on March 9, 2015, alleging an onset date of November 30, 2013. [Filing No. 7-6 at 2; Filing No. 7-6 at 8.] Her applications were initially denied on June 23, 2015, [Filing No. 7-4 at 6; Filing No. 7-4 at 15], and upon reconsideration on November 6, 2015, [Filing No. 7-4 at 25; Filing No. 7-4 at 32]. Administrative Law Judge Daniel J. Mages (the "ALJ") conducted a hearing on August 15, 2017. [Filing No. 7-2 at 40-70.] The ALJ issued a decision on September 18, 2017, concluding that Barbara S. was not entitled to receive benefits. [Filing No. 7-2 at 16.] The Appeals Council denied review on August 1, 2018. [Filing No. 7-2 at 11.] Following a judicial review appeal, a district court judge granted the parties' joint motion to remand the claims back to the SSA by an order dated March 5, 2019. [Filing No. 7-13 at 35.] On April 24, 2019, the Appeals Council ordered

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

the ALJ to reconsider the claims and give Barbara S. the opportunity to have another hearing. [Filing No. 7-13 at 39-43.] On September 16, 2019, the ALJ conducted another hearing. [Filing No. 7-12 at 35-56.] On September 25, 2019, the ALJ issued another decision concluding that Barbara S. was not entitled to receive benefits. [Filing No. 7-12 at 10.] Barbara S. initially requested review that was later withdrawn, she did not file written exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction, such that the ALJ's decision was considered administratively final after sixty days. [Filing No. 11 at 2]; 20 C.F.R. § 404.984(c)-(d). On January 15, 2020, Barbara S. timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [Filing No. 1.]

**I.
STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668,

678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v)[2], evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R.

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects. *See, e.g.*, 20 C.F.R. § 416.920(a)(4)(i)-(v). The Court will take care to detail any substantive differences that are applicable to the case but will not always reference the parallel section.

3

§ 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Barbara S. was 39 years of age at the time she alleges her disability began. [*See* Filing No. 7-6 at 8.] She has completed the eleventh grade, with a history of special education, and she previously worked as a babysitter. [Filing No. 7-7 at 19.][3]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Barbara S. was not disabled. [Filing No. 7-12 at 25.] Specifically, the ALJ found as follows:

- At Step One, Barbara S. had not engaged in substantial gainful activity[4] since November 30, 2013, the alleged onset date. [Filing No. 7-12 at 15.]

- At Step Two, she had "the following severe impairments: degenerative disc disease; asthma; hypertension; obesity; intellectual disorder/borderline intellectual functioning; a mood disorder; anxiety; a panic disorder; a personality disorder; and posttraumatic stress disorder." [Filing No. 7-12 at 16 (citations omitted).]

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 7-12 at 16.]

- After Step Three but before Step Four, Barbara S. had the RFC to "to perform a range of light work (20 CFR 404.1567(b) and 416.967(b)) defined as follows: sitting six hours during an eight-hour workday; standing and walking six hours during an eight-hour workday; lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing, stooping, kneeling, crouching, and crawling; no exposure to extreme heat or extreme cold; occasional exposure to humidity, dusts, fumes, gases, and other respiratory irritants; simple one and two step tasks with the ability to sustain the attention, concentration, persistence, and pace necessary to carry out these work-like tasks; no assembly line or production rate pace; occasional interaction with coworkers and supervisors; no interaction with the public; and no reading required but jobs [sic] tasks shown with verbal instructions or a short demonstration." [Filing No. 7-12 at 19-20.]

- At Step Four, relying on the testimony of the vocational expert ("VE") considering Barbara S.'s RFC, she was incapable of performing her past relevant work as a child monitor. [Filing No. 7-12 at 24.]

- At Step Five, relying on the VE's testimony and considering Barbara S.'s age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision in two occupations, as a bone picker and final assembler. [Filing No. 7-12 at 24-25.]

### III.
### DISCUSSION

Barbara S. asserts a host of errors regarding the ALJ's decision. The Court will begin by addressing an argument that is dispositive of the appeal.

**A. Edema**

Barbara S. asserts generally that the ALJ: (1) "cherry-picked" the facts by failing to confront the evidence most supportive of her claim, and (2) failed to provide a logical bridge from the evidence to his conclusions. [Filing No. 9 at 12-13.] Barbara S. contends that the state agency consultants did not consider a new diagnosis of edema because it postdated their reviews. [Filing

5

No. 9 at 14.] She asserts that the ALJ's RFC finding failed to account for the limitations from her edema, despite her treating provider prescribing compression stockings and leg elevation, her testimony that she continued to manage the symptom by elevating her legs in a recliner, and the VE's testimony that the need to elevate her feet more than twelve inches off the ground would require an accommodation by competitive employers. [Filing No. 9 at 27.]

The Commissioner contends that the ALJ's RFC finding was supported by substantial evidence, including objective examination findings showing no edema in 2019. [Filing No. 11 at 16.] The Commissioner argues that no medical opinion assessed greater limitations than those included in the ALJ's RFC finding, such that reversable error cannot be established. [Filing No. 11 at 18.] The Commissioner contends that the ALJ addressed Barbara S.'s need to elevate her feet because of edema but reasonably concluded that no such limitation was necessary because examination findings had not shown edema and the ALJ may discount temporary limitations. [Filing No. 11 at 20; *see* Filing No. 11 at 20 n. 6 (noting that Barbara S.'s treating provider had prescribed elevation but had not specified the duration of that recommendation).]

In her reply, Barbara S. contends that even if edema was not a severe impairment, the functional limitations resulting from non-severe impairments must be considered in the RFC finding. [Filing No. 12 at 11.] She also asserts that the ALJ failed to consider highly pertinent evidence because he merely stated that edema was not shown on examination before or after the diagnosis despite evidence that Barbara S. consistently complained of limitations resulting from the symptom. [Filing No. 12 at 12; Filing No. 12 at 12 n.4.]

The ALJ's conclusion that edema was not shown on examination was incorrect. On July 6, 2018, Barbara S. presented to her primary care provider complaining of edema in both legs that had persisted for two months. [Filing No. 7-17 at 11.] The examination findings documented

edema, +2, bilaterally. [Filing No. 7-17 at 13.] She was prescribed Lasix.[5] [Filing No. 7-17 at 15.] At her next visit, on August 31, 2018, the examination finding was the same. [Filing No. 7-17 at 8.] Her provider's assessment included a diagnosis of edema, and the treatment plan specified in part, bilateral lower extremity "edema/stasis: stocking (GAVE Prescription), elevate." [Filing No. 7-17 at 8.]

At the hearing, on September 25, 2019, Barbara S. testified that she needed to use a walker because her feet continued to swell and hurt, she also took a "water pill" that she thought did not work, she could not stand for more than ten minutes at a time, and she mostly sat in a recliner. [Filing No. 7-12 at 40-41.] Upon questioning by her representative, Barbara S. testified that she keeps her feet elevated in the recliner at a level above her waist for most of the day, every day, and had done so for at least the last six months. [Filing No. 7-12 at 44-45.] The VE testified that an individual could elevate their feet up to twelve inches at their workstation and it would be "fine" with competitive employers but the need to elevate them any higher would be an accommodation. [Filing No. 7-12 at 52.]

As noted, the ALJ explained his RFC finding—that did not include any relevant limitation—by stating "[e]levation of feet was not mentioned until a medical appointment in August 2018, but physical examinations have not shown edema before or since then (15F/4)." [Filing No. 7-12 at 23.]

The ALJ's conclusion is both incorrect and not supported by substantial evidence. Examination findings found bilateral edema both before August 2018, as described above, and after. [Filing No. 7-17 at 19 (March 11, 2019); Filing No. 7-17 at 24 (January 25, 2019).] To the

---

[5] Lasix is brand name for the generic Furosemide, a diuretic used to treat fluid retention/edema. https://www.rxlist.com/lasix-drug.htm#description (last visited August 3, 2020).

extent the Commissioner asserts that these examination findings were negative, negative edema was noted in the "ROS" or review of systems section of the treating provider's records, which corresponds with the patient's complaints. [Filing No. 7-17 at 8 (August 31, 2018); Filing No. 7-17 at 13 (July 6, 2018); Filing No. 7-17 at 19 (March 11, 2019); Filing No. 7-17 at 24 (January 25, 2019.] The "Physical Exam" section of the treating provider's records documented +2 bilateral edema at each of those visits. [*See, e.g.*, Filing No. 7-17 at 19.] Moreover, the subjective complaints section of the provider's records for each visit specifically referenced edema, despite the ambiguity with the later review of systems section. [*See, e.g.*, Filing No. 7-17 at 17.] In fact, there was no examination finding following the 2018 diagnosis that specified that edema was absent.

Accordingly, the ALJ's rationale that edema was not objectively demonstrated on examination as a persistent issue is not supported by substantial evidence. *See Craft*, 539 F.3d at 673 (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (the ALJ must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled)). Further consideration of Barbara S.'s edema and its effect on RFC is needed on remand.

**B. Other Arguments**

Having found remand supported by the issue above, the Court declines to provide any in-depth analysis of the remaining assignments of error. To the extent that Barbara S. raises listing arguments at Step Three, the evidence does not definitively establish that the requirements of any listing were met such that the Court would consider remand with instructions to award benefits. Accordingly, remand for further consideration is the appropriate disposition here.

The Court notes that Barbara S.'s counsel uses a "shotgun" approach to asserting errors with the ALJ's decision that distracts the Court's resources from both her meritorious claim(s), as

well as other deserving cases. *Williams v. Berryhill*, 2018 WL 2234902, at *2 n. 17 (D. Utah May 16, 2018). Various claims raised by Barbara S.'s counsel are not developed to the point of establishing error, do not fully engage the ALJ's relevant rationale, and/or do not properly analyze the authority they purport to rely upon.

For examples, Barbara S. contends that the ALJ failed to develop a full and fair record because the hearing occurred in 2019, but the most recent psychological consultative examinations ordered by the SSA were performed in 2006 and 2008, such that she contends there was a gap in the record of 11 to 13 years. [Filing No. 9 at 16-17.] However, in one of the cases cited by Barbara S., *Poyck v. Astrue*, 414 F. App'x 859, 861–62 (7th Cir. 2011), the court held that the ALJ did not abuse his discretion by declining to order an additional consultative examination, despite the formal request by the claimant's representative, because the appellant did not specifically assert what gap such an examination would fill—such as evidence of functional deterioration—and the claimant's treating psychiatrist's records established that his mental health impairments had improved. Barbara S. makes no attempt to distinguish the authority she cites. She was represented at the hearing, no consultative examination was requested, and the record contained recent treatment evidence from a specialist during 2019, which included mental status examination findings and assessments of both the severity of her mental impairments (generally moderate) and that improvement had occurred. [*See, e.g.*, Filing No. 7-18 at 5-6.]

Barbara S. also contends that there is authority that General Educational Development ("GED") levels specified in the *Dictionary of Occupational Titles* are considered requirements of the job such that the ALJ must consider any conflicts between them and the claimant's RFC. [Filing No. 9 at 29.] However, Barbara S. asserts only conclusively that her "borderline intellectual functioning and mild mental retardation would result in limitations on Plaintiff's Reasoning,

Language, and Math abilities as described by the GED levels. While the jobs identified [by the VE] have GED Levels of 1, that would not salvage the [d]ecision." [Filing No. 9 at 29-30.] The VE testified that the ALJ's hypothetical question—describing limitations matching his ultimate RFC finding—had severely eroded the occupational base, such that only two occupations qualified. [Filing No. 7-12 at 50-51.] The VE explained that her conclusion was based on the combined limitations, including the limitation to only one and two-step instructions that the VE assessed to be consistent with only a level one GED reasoning level. [Filing No. 7-12 at 51.] Again, Barbara S.'s counsel makes no attempt to apply any of the authority that she cites to demonstrate that the issue is not only relevant but results in prejudice. She does not develop a discussion of the GED levels required by the jobs cited by the VE, demonstrate how the definitions of the required levels conflict with the ALJ's RFC, or alternatively establish that there is specific evidence of functional limitations that conflicts with the ALJ's relevant RFC assessments. *See Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (showing the type of analysis necessary to establish error).

In the future, a more focused appeal by Barbara S.'s experienced and capable counsel—that selects the most meritorious issues and gives them ample development—would be of more assistance to the Court on judicial review.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Barbara S.'s benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 8/5/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel